Mr. Cho, our next case is SPARKS BELTING v. United States Ms. Preece? Yes, sir. May it please the Court, my name is Lynn Preece from the law firm of Edmund Makarowski, PC, and I represent the Plaintiff Appellant, Sparks Belting Company. This basically is an appeal from... Ms. Preece, you need to speak up a little bit. Sorry, I do beg your pardon. This is an appeal from the Court of International Trade. It involves the tariff classification of conveyor belts which are used in an industrial application, and my client is the importer of the product. What mistake did the trial court make? This is actually on cross motions for summary judgment, and there are two issues involved here involving three products. The first issue is a statutory construction that basically is on the definition of the word include in the context of a tariff heading, and the second issue is whether the court erred as a matter of law in saying that there was no genuine issue of material fact precluding summary judgment with respect to one of the products. For simplicity, the first issue involving statutory construction, in the briefs you'll see that the products have these long, confused identifications, so I will call them... In the first issue, statutory construction, I will call them products A and B, and the second issue involving whether summary judgment was proper will be product C. Why don't you just jump right into whether note 9 includes interwoven... Yes, yes, I will certainly do that. I will certainly do that. What's wrong with the trial judge's understanding of note 9? Of note 9? Yes, what's wrong with that? Because note 9 says the woven fabrics of chapter 50 to 55 include, and I will call them bonded fabrics. Now, my products A and B are woven fabrics. They're made by interlacing textile yarns, and it's interesting to note that the explanatory notes define woven fabrics as both products, that is, both made by interlacing textile yarns and those made by thermal and adhesive bonding. We believe that the way the court held that note 9 was restrictive and only meant to cover bonded fabrics is against the plain meaning of the term because it excludes the vast majority of what the explanatory notes call conventionally woven products. But we wouldn't know what woven fabrics they were talking about without the include clause, would we? Well, there is a definition of, as I say, the explanatory notes which are considered very persuasive in tariff classification in statutory construction do say that the word woven fabrics include both I have a bit of a .5903 and 5903.10 and 5903.10.15. Now, everybody agrees that woven fabrics, don't they, are included within 5903, textile fabrics? Yes, the court found that. The court also found that because you work downwards, that it was 5903.10, so we're just looking at the eight-digit level, and that's why we have, whether it's fabrics in note 9, and if it's not, then it goes into the residual category which the court found, which is the other category. Well, I mean, as I understand the chapter notes that accompany this, note 1 says, textile fabrics applies only to the woven fabrics of chapters 50 to 55, correct? Yes. So, textile fabrics is only woven fabrics, it's not other, there aren't other things that qualify as textile fabrics. Not under this definition, that's why the court found this. So, if 5903 is broad, it applies to woven fabrics of chapters 50 to 55, and that's what the explanatory note pertains to as well, woven fabrics are broadly, encompass both, right? Yes. Do they, does the word woven fabric always, in 5903, encompass these bonded things that aren't interwoven? It has to because the heading, you have to, the statutory construction, you must first, under the general rules of interpretation, look at the heading first. It's only when you compare headings, only once you've found the first heading, can you go to the subheading. So, both of them are included in the heading, and both of them are included in the subheading. Well, I guess that's my problem. Yes, I understand. I'm a bit confused. If both of them, and only them, are included in the heading, because textile fabrics is woven fabrics only, and if that was meant to include both of them, then I suddenly start wondering why they would need a subsection that then said both of them are included. It seems to me that each subsection would get progressively narrower, and that your interpretation would give identical scope to the heading and the subsection, which would make the subsection superfluous. I understand where you're going with that, but that's not actually what note 9 says. Note 9 actually mirrors the explanatory notes, and actually the heading, the subheading in particular, says that the, excuse me. It says fabrics specified in note 9. Yes, it says fabrics. It doesn't just say bonded fabrics, and the first thing that, when you look at note 9 itself, it says woven fabrics include, so that's why we're asking for a more broad interpretation, because of the actual statutory language. Whether Congress intended to do that, that's not what the language says. But the way you read it sort of makes note 9 irrelevant. That note 9 is irrelevant? That's the way you're reading it. When you say it includes fabrics, you think it includes fabrics other than those described in note 9. Well, as I say, it says, but that's, whether or not it intended to do that, the language it's written doesn't actually do that, because the definition of... It would have been different if it had said the woven fabrics of chapters 50 to 55 mean fabrics consisting of, your argument is, if it said mean that, that would have been different. I think that, no, I think that note 9 itself is broad, because it has to include both types of fabric. What we're saying is, if the subheading, if it meant to just include the bonded fabrics, then it should have said that, and not just said included the whole of note 9. Well, the explanatory note, I think it's part under woven fabrics, which is C, then it has right under C, it's A, B, C, and D. That's fine. So, go to part D, and it says, subject to the provisions of A to D, above the woven fabrics of chapters 50 to 55, by application of note 9, include, for example, fabrics consisting of, and then it has two dashes with examples, and then the next sentence is, the essential characteristics of these fabrics is that the yarns are not interlaced, as in conventional woven fabrics, but are bonded at the intersections. So, why shouldn't I interpret the explanatory note as saying, the fabrics in note 9, the essential characteristics of these fabrics, is that they're not interlaced? Why doesn't that support exactly what the court below held? I was a lot of questions. Yeah, no, that's fine. That's fine. That's quite all right. I have to remember the... If you want to pull it... No, no, no, that's fine. That's quite all right. What I would say is that these are only examples. The term woven fabrics is expressive. These are examples. This is meant to be inclusive. These would not... Ordinarily woven would connote interlacing, which is the textiles... But it says the essential characteristic of these fabrics, all these fabrics. Of note 9 fabrics? Yes. Again, I think it's just trying to make clear that the woven fabrics is very expansive and includes both of them, because woven fabric ordinarily, traditionally, would have been the interlaced textile fabric. They're just making absolutely sure that these are not excluded, that it is inclusive rather than exclusive. Do you want to turn quickly to... I was going to say, could I just talk a little bit about the sample? Basically, in this particular case, the court held that there was no admissible evidence, but the court did actually have a sample, and the sample is here in the court record. But you wouldn't ask this court to make a factual finding, would you? We're not saying it's a factual finding. It's a very well-settled maxim of customs law that the sample in and of itself is a potent witness, and this is... But in order to determine whether it twists around a seven-millimeter cylinder, you have to perform a factual experiment. I would say that the court quite regularly... Both courts, both below and in summary judgment motions, and also this court has also done that, has examined the articles in question by themselves... What would happen if we did that and Judge Plager says, well, that looks to me like it's rolling around, and Judge Moore said, oh, no, no, that's not rolling around. It's too bent. What would I do as the third member? How would I resolve that dispute? You'd have to agree with me. But see, we'd have a factual problem, wouldn't we? Yes, I understand what you're saying. I was going to say in that case, it would be very difficult, I think, for me to convince you, but the point of the fact is that the court said earlier in its opinion where samples had been submitted that the plaintiff had brought out credible evidence, and then with this one, because the test that the customs laboratory did, did not say that it was flexible, the court didn't at the same point look at the examinees. I'm not saying whether or not it would have been able to examine, whether it would have been able to make a resolution, but what we're saying is that there should not have been an automatic saying that there was no rebuttable evidence. Well, couldn't you have done the experiment? Couldn't you have had someone wrap the fabric around the cylinder and then report to the court? This was an issue... And then they could rebut that if they wish to. Yes, unfortunately, this was an issue where the affidavit, the portion of the affidavit from our witness that testified to that was stricken. A second affidavit was submitted with the rebuttal brief, but was never mentioned in the opinion, so we were unable to... I take it... So my time is up. Part of your problem, I take it, was that the samples had long since been gone? Yes, that was part of it. The samples were 2000. You started this case in the year 2000, but you didn't really get to this litigation until eight years later, is that right? That's correct, Your Honour. And the product is now gone somewhere? Well, yes, because the product, the products, they are, they're constantly changing, so these particular samples were, they were obsolete. Thank you, Ms. Preece. Thank you. Ms. Lee. May I please court? As counsel has noted, there are two issues and three products that are involved here. Of those two products, the first issue is the interpretation of Note 9 to Section 11, and Note 9 to Section 11 is apparent when you read the HTS in its entirety, when you read it in context, and if you start by reading... Boy, that's quite a job, isn't it? Reading the HTS in its entirety. Well, in its, in context, of course. You just mean this one section, because otherwise I'm probably... Oh, yes, yes. Okay. Yes, yes, just this one section. One quick question before you go into the merits. Is this an issue over which there is a lot of dispute? Is this a test case of some sort, or is this a single case issue, this Note 9 issue and how it should be interpreted and whether it includes interwoven? Does the government have other cases? No. Note 9 fabrics are, if I'm speaking with customs, it seems that there are not many Note 9 fabrics that apparently what we see from the tariff is that these are specialized fabrics, as we can tell by reading the tariff and the explanatory notes, and they were included as a subsection of wovens because they are so specialized. The reason I ask is in the related case section of the blue brief, it indicates six other cases that depend on the outcome of this case. They're all sparks belt, they're all conveyor belting cases, and they rely on that only to the extent that Note 9 is implicated. There are many products, and some products do not implicate Note 9. It's impossible for me to tell, standing here, exactly what those products in those six cases fully encompass, but to the extent that it encompasses these issues, then yes. But this is not an issue that is something that we see all the time. In fact, this is something quite rare in terms of Note 9. But getting back to the interpretation of Note 9, it's like if we look at the headings, the section, the chapter notes, which are relevant here, under 5903, which we, there is no dispute that these products do fall within that heading, and as Judge Moore, you noted, that heading includes woven fabrics through the term textile fabrics, and Chapter Note 1 to Chapter 59 says that textile fabrics applies to woven fabrics of Chapters 50 to 55. It also does, Judge Moore, include other fabrics, some knits, some braids, so it's not simply woven fabrics. Oh wait, the word textile fabrics is not simply woven fabrics? Yes, no, it's not. It says textile fabrics applies to the woven fabrics, and then there's a comma, the braids and ornamental trimmings in the piece of heading 5808, and knitted or crocheted fabrics of headings 6002 to 6006. So there are some knits and braids. Okay, braids and knits in addition. Correct. That's right. So it encompasses more than just woven. Isn't braid kind of like woven anyway? I mean, you know, you braid something, you're I do know that the definition of woven appears in the general explanatory notes 1c in the preamble, and also, as you noted before, where it is discussed of Note 9 fabrics, and woven fabrics are obtained by interlacing textile yarns. So I suspect that braids are not of interlacing textile yarns, but it would have to fall within that definition of interlaced yarns. Those are what and then now that we've established that 5903 encompasses the general category of, in our case, woven fabrics, skipping down, then going through the subheadings, it's like we get to what Sparks would like their products to be classified as, and that directly implicates Note 9 fabrics, and reading Note 9 to Section 11. Reading Note 9 to Section 11 tells us that there's a particular unique fabric construction that is described there. There are layers of parallel yarns that are laid just over each other at acute or right angles, and then at those angles, it's either thermally bonded or glued. So this is a special construction that is not interlaced fibers, but for the tariff purposes, Note 9 fabrics are considered to be a subset of woven fabrics. It's an odd use of the term woven, isn't it? I would agree. That's good. But for tariff purposes, there are some things like that, and this is the way the certain constructions that may not be conventional to our understanding. Congress says it's woven, and it has to be woven. Yes, so your honor, that's what our position is. So then if we look at Note 9, this is how we interpret it. You have subsections which get narrower and narrower, and you see that Note 9 is a subcategory. But what's the matter with Ms. Priest's argument that the phrase include fabrics, the woven fabrics include fabrics of this type, doesn't exclude fabrics of other types? What's the matter with that? Perfectly good argument in terms of what the word include means. Well, the problem with the interpretation of the Note 9 fabrics, if it includes all woven fabrics, is that there would be no meaning to that subheading. Then everything would be included there, all woven fabrics. So would you agree, if this weren't a subheading case, if this were just the only heading at the top level that said woven fabrics include these kinds, then would you agree that it would also include the traditional interwoven fabrics if there weren't these other indicia that lead you to a different conclusion? If I may just try and understand the question, if it's woven fabrics as it's defined in the tariff currently, it's interlaced fibers, and then... If the top level heading 5903 were woven fabrics, and there was a note that says the woven fabrics include fabrics like this, part of your argument seems to hinge on the fact that this is a subsection. And, you know, the broad section and the subsection would have exactly the same scope if we interpreted the word including the way she wants us to. And what I'm saying is, suppose that we take the subsection heading away, so that the only issue we have to decide, there is no subsection, this is the only section, and say that it's the only section, would your answer be different? What I'm trying to always excludes other things from being considered, or do you think it's only in the context of this case, because of all the other indicia, that the word including is actually limited to what is then disclosed? In this case, because of all the other indicia, yes, I agree that, you know, it gets narrower and narrower. Because the word including is generally relatively broad, it's an open type of word normally, including, you know, if I had a party, including Judge Rader, well, that wouldn't mean it was just him and I, that could mean you're invited, and that lots of other people are invited as well. That's true, and also I see note nine seems to say that it's like woven fabric, so it's includes note nine, so that's your broader section there. So it's not just woven fabrics that are made of interlaced fibers, but the word includes then extends to note nine fabrics. Sort of what we were just saying, that these are specially constructed fabrics, and they are put here, they're considered to be woven fabrics for tariff purposes. So in terms of that, that is the broader reach that I think that you're getting at. So you would agree that the trial judge may have gone too far in the way he read note nine? No, I think that the trial court was correct in his of note nine. Help me understand exactly what's at issue in this case. I'm puzzled by it a little bit. We've got three different pieces of belting that were brought in in that 2000 entry, right? And customs wanted to, and did, put it under heading 5910, which has a 5.6 percent tariff. We all agree that's wrong. The government agrees that's wrong, because they were less than three millimeter. Correct. So now we're talking about putting them under some other heading. Well, the CIT put it under, at least two of them, under 5903.1020, and that's a 1.7 percent tariff. Is that right? I think so. Whereas what Sparks apparently wants is 5903.1015, which is a 1.4 percent tariff. That's a rather small difference. Is that what this whole argument is about? Now, the other thing is the other category, which is 10.3 percent. Is that where the big belting quantity is? I'm just trying to understand which piece of the argument is at issue here. Did I lose you on that one? When we classify goods, we don't regard the duty rate. We look at where the item should fall. Yeah, I understand that. I'm just trying to understand the consequences of all of these phrases. They do have consequences. Indeed, they do. So, depending upon what subheading the product falls under, yes, it will have an attendant duty rate, but the product must, as you know, must meet the terms of the subheading. Is the majority of the product the EM82PU Trans AS? Do we know that's at issue? I'm sorry. Is that the majority of the product? Is that the majority of the... I don't know. You don't know. Okay. I do not know. All right. Thank you. The other point that I would like to also bring up to demonstrate that, again, Note 9 fabrics are supposed to be specialized and they do not encompass traditional woven fabrics, is that if we look at heading 5407, that heading specifically provides for woven fabrics. And under that heading, you have various subheadings which delineate different sorts of woven fabrics, like 540710, woven fabrics from high tenacity yarn of nylon, 540720, woven fabrics obtained from strip or the like. You only have a few minutes left. Do you want to turn to the second issue? Yes, Your Honor. With regard to one product of which there is a sample, this deals with the proof and meeting the criteria that is outlined in evidence that is before it. And a moment must make a showing sufficient to establish the existence of an essential element to its case. Here, Sparks failed to present sufficient evidence to the court below. It did provide a sample. However, that sample needed to be tested and needs to be tested in accordance with Chapter Note 282. We have the sample here somewhere. Does someone have it? Would you mind handing it out to me? So, I took a look at the sample. You weren't fact-finding though. While I'm no fact-finder, I am just curious how the government tested the sample and found that on a seven millimeter circle, it would crack when I can like smoosh it up like this and it doesn't crack. So, I'm no fact-finder, but I can certainly not only wrap this around a pencil, I can make it go completely flat and bring it back out and it doesn't crack. So, I am curious how the government lab concluded it cracked. Did they maybe have an old sample? You know, I'm just curious. I don't know. We were provided a sample. You don't have to know. I don't have to know. It's not in the record. Okay. It's like, I don't know what sort of sample we have, but we were provided with a sample. It was tested. It failed the test. We provided affirmative evidence below. Sparks provided just a sample. It had the opportunity to provide evidence. Would it be the case that in every case providing just a sample would not be enough? It depends on what the case is and it depends on what the sample is. In the cases that were cited by Sparks in his brief, Simod, Process Plastics, Toy Biz, these things dealt with something that is easily seen, something that the judge can look at. It's some easily ascertainable. It had nothing to do with manipulation, testing of a sample. So, does it require just a visual? Are you saying the distinction, maybe the legal distinction should be if the judge can just look at it and decide, but if the judge has to touch it or turn it over or pick it up or fold it in half, that's too much? It certainly would bring it to a different level. Yes, it would be too much. So, anything a judge could ascertain through visual inspection is something that should be done by a judge. So, please, if something is red or blue. Isn't the CIT a trial court? It is. Fact-finding? Yes. It can assess with the facts that is before it. We have not come, I have not come across any case where the judge will go and manipulate a sample to then find its own facts. Thank you, Ms. Lee. Thank you, Your Honors. Ms. Preece, you have about a minute and a half left. Yes, Your Honor. I'd just like to make a couple of brief remarks. First of all, I think that the government, they use the shorthand Note 9 Fabrics, and that's not what the statute says. It says Fabrics in Note 9, and Note 9 includes the first two words are woven fabrics. We believe that that means it should be read expansively. The government also points you to heading 5407, and what I would say with that is the fact that, quite frankly, that's probably how the, what should have been done, but that's not what it says in heading 5903. The fact of the matter is that the plain meaning includes woven fabrics of Note 9, and that's interlaced fabrics. And as far as samples are concerned, I would just point you to the maxim that the court has long held that they are potent witnesses in their own right. Thank you very much. Thank you, Ms. Preece. This concludes our afternoon. All rise. After you. The honorable court is adjourned until tomorrow morning at 10 a.m.